ROBERT L. D. HENRY v. WILLIAM H. WILLARD, surviving partner of R. F. MORRIS & SON.

The declarations of a supposed partner are not admissible against the other, if made in his absence, unless the partnership is first established *aliunde.*

The fact of partnership can only be established by evidence foreign to, and disconnected from the declarations of the alleged partner.

(The cases of *Grady* v. *Ferebee,* 68 N. C. Rep. 356; *McFayden* v. *Harrington,* 67 N. C. Rep. 29; *McCoombs* v. *N. C. Railroad Co.,* 70 N. C. Rep. 178; *Stenhouse & McCauley* v. *The C. C. & A. Railroad Co.;* Ibid, 542, cited and approved.)

CIVIL ACTION, tried before *Kerr, J.,* at Fall Term, 1874, ORANGE Superior Court.

The summons was originally issued against the defendant as surviving partner of R. F. Morris & Son. At Fall Term, 1874, the plaintiff obtained leave to amend his complaint (which was granted on payment of cost), by adding a complaint against the defendant as *executor de son tort* of Robert F. Morris, deceased. The defendant filed an answer to the additional complaint, and the case was transferred for trial to Orange county.

The complaint alleges that for several years immediately preceding the 13th of September, 1872, the firm of R. F. Morris & Son existed and transacted business in the town of Durham, buying and selling tobacco, and manufacturing tobacco and selling the same. That defendant was a partner in the said firm. At divers times preceding the aforesaid date, the plaintiff sold and delivered to the said firm at the instance and request of R. F. Morris, several thousand pounds of tobacco, on which partial payments were made, leaving a balance due, of principal money, at the date aforesaid of $1,093.85, which the said firm promised to pay. R. F. Morris died in the year 1873 leaving the defendant surviving partner of the firm. Payment of the said money had been demanded before the commencement of this action, and refused ; and that no part of the balance and interest have been paid.

For a second cause of action the complaint alleged that after the death of R. F. Morris, the defendant took possession through his agent, R. H. J. Blount, of all the property he could find belonging to R. F. Morris. That Blount sold the same, turning over the proceeds to defendant, except about the sum of $300, which was al.owed the widow of Morris as her year's support and defendant has rendered himself liable for the debt due from R. F. Morris & Son or R. F. Morris, to the plaintiff.

The defendant in his answer denied that he was a partner or a member of said firm, or that he was interested in said firm, or that he had any connection therewith. Defendant farther denied that he was surviving partner of the firm and that said firm continued to exist after the 15th day of April, 1872. The defendant denied on information and belief that said firm was ever indebted to plaintiff in the sum of $1,093.85. Defendant denied that R. F. Morris died at the time alleged in the complaint, but alleged that said Morris died about the middle of the year 1872.

As a farther answer to the complaint the answer alleged that prior to the 1st day of September, 1869, defendant and one Edward A. Morris and the said R. F. Morris together formed a limited partnership in which defendant was the special partner and R. F. Morris and his son E. W. Morris were the general partners, under the firm name of R. F. Morris & Son, and that the articles of said partnership or certificate thereof was duly recorded in the records of Orange county, in conformity with the provisions of an act of the General Assembly, entitled "An act to provide for limited partnerships." By the terms and limitations of said articles, said partnership was to expire and did expire on the 1st day of September, 1869. On said day the partnership ceased to exist and was never renewed, and after that date defendant was never, at any time, a partner of R. F. Morris  After that date a new partnership transacted business under the same firm name, but defendant was in no wise connected with said firm and had no interest therein, and

defendant was informed and believed that E. W. Morris was not connected therewith.

Defendant denied that the limited partnership of R. F. Morris & Son, which expired on the 1st day of September, 1869, had any dealing with the plaintiff now remaining unsettled, and denies that said firm owes the amount demanded or any part thereof. Defendant alleged that he never at any time resided at Durham, and that he never at any time transacted any business for the firm of R. F. Morris & Son, whereof he was a special partner, and never at any time did he deal with the plaintiff, for or on account of said firm, or for or on account of any other firm, or for himself individually, and defendant farther alleged, that at no time did he ever hold himself out as a general partner of the firm whereof he was a special partner or of the subsequent firm of R. F. Morris & Son, and at no time did he ever have any dealings for or on account of the subsequent firm.

And for a farther defence the defendant alleged that Edward W. Morris and the administrator of R. F. Morris are necessary parties to this action.

That a special partner is not personally liable for the contracts of a limited partnership.

That the said supposed claim of plaintiff did not accrue within three years before the commencement of this action.

Before the jury was empanneled the defendant objected to the joinder of the two causes of action set forth in the complaint. The Court overruled the objection and defendant excepted.

On demand of the defendant the plaintiff furnished a bill of particulars of his claim.

The plaintiff contended that in addition to the limited partnership from September 1st, 1866, to September 1st, 1869, the terms of which are set out in the answer of the defendant, the same firm of R. F. Morris & Son was continued as a general partnership, or that a new one was formed between the defendant and R. F. Morris at or before the close of the first, as

a general partnership under the same name of R. F. Morris &
Son, and the several lots of tobacco, for the balance of which
he claimed payment, was sold and delivered to the same firm
or firms, in which he alleged the defendant to be a partner,
upon contracts of purchase made with the said R. F. Morris.

The plaintiff was introduced as a witness in his own behalf,
and also other persons who gave evidence tending to show that
the plaintiff resided in the county of Person, some twenty-five
miles from Durham, where the alleged partnership business was
carried on.

The plaintiff testified that he commenced dealing with them
in 1868, in which year he sold them, through said Morris, to-
bacco to the amount of $371, of which sum he received at that
time $200, leaving a balance due him of $171. In July or
August, 1869, according to his impression, certainly before the
10th of September, he sold them another lot of tobacco,
amounting to between $400 and $500, of which he received
twenty-two dollars.

The plaintiff was proceeding to state a sale to the firm in
1870, when the defendant objected. The plaintiff's counsel
stated that he should offer evidence to show that defendant
was a partner at that time. His Honor then allowed the wit-
ness to proceed, with the understanding that the evidence was to
be ruled out if such evidenc was not adduced.

The witness then stated that in the summer of 1870 he sold
said firm, through Morris, another lot of tobacco, amounting
to about $700. To this evidence the defendant excepted.
Notes had been given plaintiff at each of his two first trans-
actions for the balance due, by R. F. Morris, signed R. F.
Morris & Son. In the fall of that year Morris sent to plaintiff
$400, which was applied as payment on said note. On the
24th of February, 1871, the plaintiff and said Morris met, and
calculating the interest due on said note, and deducting pay-
ments made, including the $400 aforesaid, Morris executed and
delivered to plaintiff the note for $487.05 now named in the
bill of particulars and now produced, and a draft on the Ral-

eigh National Bank for $200, payable in thirty days to secure the balance then due. Both the note and draft were signed "R. F. Morris & Son." On the 27th of March ensuing, the plaintiff having gone to Durham, on his way to Raleigh to realize the draft, which had fallen due, Morris told him he need not go, that the firm had funds in New York on which he would draw, and accordingly gave him the bill of exchange of that date for $200, signed R. F. Morris & Son, mentioned in the bill of particulars. Plaintiff handed said bill to one T. C. Ellis, a merchant at Cedar Grove, and told him to collect it and account to him. This bill was produced on the trial, with protest for non-payment by a Notary Public in New York, and with it a letter to said Ellis, dated "Durham, April 17th, 1871," to the effect that the writer had received the bill of exchange aforesaid and would go to Raleigh for money and pay it off. This letter was signed "R. F. Morris & Son, per Blount," and was in the hand-writing of R. H. J. Blount. The plaintiff farther testified that in May, 1872, he sold to R. F. Morris, for said firm, his whole crop of tobacco for 1871, and that by agreement made at the time of the sale, which was made at plaintiff's residence, parts of the tobacco were to be delivered at the factory, and other parts at the public warehouse for the sale of tobacco at Durham, to be delivered at said warehouse in the name of plaintiff and so sold, and plaintiff was to get the proceeds, and if it brought an excess above the price agreed on, such excess should be credited on the debt due to the plaintiff. In carrying a load of it to the factory in May, 1872, Blount, who was in charge thereof, refused to receive it, saying he knew nothing about it, but Morris arriving soon afterwards, after some conversation between him and Blount, it was received. Going thence to the house of Morris to dine, Morris inquired if he wanted the money for this load, and upon plaintiff's replying that he did, Morris directed his son, John B. Morris, to go to the factory, or to Mr. Blount, and bring it. The young man went out and brought and paid to the plaintiff $100, which was the value of that load. Ware-

house bills were produced of the tobacco mentioned in the bill of particulars, which the plaintiff deposed were delivered in pursuance of the contract of May, 1872, at prices agreed on with Morris. That the tobacco sold for less than Morris agreed to pay. He received from the warehousemen the amount for which it sold, and the balances of $155.52 and $178.84, named in the bill of particulars were still due.

On offering to prove these items in 1872, the defendant objected, the plaintiff replying that he expected to show that the defendant was connected with it. The evidence was admitted subject to be ruled out unless such evidence was shown, and the defendant excepted.

The plaintiff farther testified, that in the summer of 1870 he was in the hotel kept by R. F. Morris, in Durham, and had retired for the night; after the arrival of the train from Raleigh, Morris desired him to yield his bed in a separate room to a passenger who had just arrived, and go into another room. While dressing for that purpose, Morris brought in the defendant and introduced him to the plaintiff and remarked "We have been buying this man's tobacco, and he does not need money and has given us time," to which defendant replied "Well! time is worth something. On the next morning in a conversation between Morris and the defendant, he heard the defendant say in reply to some remark of Morris in respect to an engine, "I have an engine at New Berne, bring that up." Afterwards in 1871 or 1872, he saw a steam engine attached to the factory.

On cross examination the plaintiff was asked why he could remember so well the language used by Morris and Willard and could not recollect dates? He replied, "I had been selling them tobacco and was watching their manœuvres."

Plaintiff farther testified on cross examination, that he subsequently demanded payment of Mr. Blount for his tobacco, at the factory, and Blount refused, saying that his name was not on his books, and that he owed him nothing.

He saw the advertisement in the Hillsborough Recorder, of

the limited partnership alleged in the defendant's answer, about the time of its formation. The advertisement being read in court, stated the time of commencement and duration of partnership to be as stated by defendant.

W. T. Blackwell was introduced on behalf of the plaintiff and testified as follows :                                                              ,

That the same sign board over the door of this factory with the inscription "R. F. Morris & Son," continued there from 1867 until the fall of 1872. Defendant was frequently at Durham during this time, sometimes had gone on to a cotton factory which he owned in Orange, but often came to Durham and went no farther. Spent his time with R. F. Morris, but had no business there of which witness was aware, except with Morris. Had often seen him at the factory. Morris was reported insolvent during all this time.

Henry Malone testified that the same year that Morris bought the plaintiff's crop he also bought the crop of witness, to be delivered at the public warehouse in Durham, for the firm of R. F. Morris & Son. The tobacco was delivered according to the agreement, and a part thereof remains unpaid for. Witness was about to state what Morris said at the time, when defendant objected. The plaintiff then read in evidence a deed dated April 10th, 1871, between Morris, Blount and Willard, which he alleged was evidence that Willard was a partner with Morris. His Honor admitted the evidence, and the witness stated that Morris said at the time of purchase that he had been considered broke but he had now a strong partner, in Mr. Willard, the President of the bank in Raleigh. To this evidence defendant excepted.

Many other witnesses were examined, and several exceptions taken to the ruling of his Honor, but as they were not considered in this court it is not necessary to state them.

The jury returned a verdict for the plaintiff, and thereupon the court gave judgment in his favor, from which judgment the defendant appealed.

*Merrimon, Fuller & Ashe* for appellant.
*Graham* and *Graham*, contra.

BYNUM, J.   This was an action against the defendant, as the
surviving partner of R. F. Morris.   The defendant denied
that he was a partner when the causes of action arose, and the
following issue, among others, was submitted to the jury to
wit :   " Was the defendant a partner with the sard Morris at
the time or times of said sales ?"   Upon this issue the plaintiff
offered much testimony tending to establish the partnership as
alleged, and then introduced one Henry Malone, who testified
that in 1872, the said Morris, while out on a " tour" purcha-
sing tobacco, bought his crop, and at the time of the purchase
remarked, " that he had been considered broke, but he had a
strong partner now in Mr. Willard, the President of the bank
in Raleigh."   This testimony was objected to by the defend-
ant, but admitted by the Court, and in that there was error.
No principle of evidence is better established than that the
declarations of a supposed partner are not admissible against
the other, if made in his absence, unless the partnership is first
established *aliunde.*   It is true, in this case, that other evidence
had been previously given, tending to establish the partner-
ship, and perhaps sufficient to authorize the Court to admit the
declarations of Morris touching his acts and conduct under the
partnership.   But this is something altogether different from
admitting declarations, the natural and only apparent effect of
which was to establish the fact itself of the partnership.   This
fact can be established only by evidence foreign to and discon-
nected from the declarations of the alleged partner.   Declara-
tions which presuppose the existence of a partnership are not
competent to establish the partnership, and use to them for that
purpose, is to substitute the effect for the cause.   It is true
that the same declarations which are incompetent generally,
may be made competent specially, and for a particular purpose.
But when declarations which are, by a general rule, inadmis-
sible, are objected to, they will always be excluded   unless the

party offering them brings them out of the general rule by specifying the exceptional and special purpose for which they are admissible. If, for instance, the defendant had got in declarations of Morris that he was not a partner, it would have been competent in the plaintiff to offer his declarations that he was a partner, not, however, for the purpose of establishing the partnership, for which they would be inadmissible, but for the purpose of contradicting the other evidence. No such special purpose was avowed or necessary here, and it is evident that the declarations were introduced and used as a circumstance, among others, to establish the partnership. That was the single issue before the jury upon which it can be pretended that the declarations were offered in evidence. The general rule must therefore prevail, that the acts and declarations of a third person are not evidence against a party, unless such third person be his agent or partner, and the agency or partnership must be established before such acts and declarations are admissible. *Grandy* v. *Ferebee,* 68 N. C. Rep., 356 ; *McFayden* v. *Harrington,* 67 N. C. Rep., 29 ; *McCombs* v. *N. C. R. R. Co.,* 70 N. C. Rep., 178 ; *Stenhouse & McCauley* v. *C. C. & A. R. R.,* 70 N. C. Rep., 542.

As we consider the declarations of Morris excluded by long and well established rules of evidence, we have not adverted to the objection that they are excluded by C. C. P., sec. 343, as being the declarations of a person since deceased. Nor is it necessary to examine any of the many other exceptions raised by the defendant, which, however, seem to prevent but little difficulty. For the error we have designated there must be a *venire de novo.*