EDWARD HELY, Appellant, v. J. H. HINERMAN et al.

Division One, March 7, 1924.

1. EVIDENCE: Conclusion: Member of Partnership. Testimony by a defendant that another defendant was a member of the partnership in whose name the debt sued on was made, is a mere conclusion of the witness, and incompetent. A partnership can be created only by contract entered into by the partners, and in order to prove its existence the terms of the contract must be proved, and its existence is to be drawn from its terms.

2. ———: ———: Letters. A letter written by one partner, as to whom the case has been dismissed, to a third party, in which he stated that another defendant was a member of the firm, and the letter of said third party in reply, in which he stated that said defendant was a partner, are mere hearsay, and legal conclusions, and incompetent.

3. ———: ———: ———: Statements to Others. Witnesses cannot testify that two of the admitted partners stated to them that a third defendant was a member of the firm. Such statements are legal conclusions, and are inadmissible to prove the defendant's membership in the partnership, even after the existence of a partnership has been established by competent evidence; nor are such declarations of the partners verbal acts to prove his membership.

4. PARTNERSHIP: Instruction: Profit on Venture. Where one of the defendants had signed a note for an existing partnership, and at the time or after he had done so two of the partners stated to him that they would give him one-fourth of the profits at the conclusion of the transaction for which the money was borrowed, it is not error to refuse an instruction telling the jury that, if they find said defendant became a member of the partnership, as defined in other instructions, then whether the firm lost money or made a profit, or whether the firm properly accounted to him for the profits and losses, should not be considered, since the pertinent matters embraced therein had been covered by other instructions given, and all else was a needless comment on the evidence.

5. ———: ———: Other Facts and Circumstances. Where all the evidence on the question whether defendant was a member of the partnership which made the debt sued on was direct and positive, it is not error to refuse a separate instruction directing the jury to take into consideration "all other facts and circumstances in evidence," for such is calculated to mislead.

6. ———: ———: **Limiting Issue to Plaintiff's Theory.** Where the court, at plaintiff's request, has given an instruction telling the jury that they must find defendant became a member of the partnership after plaintiff had furnished the materials to the firm for whose value he sues, it is not error to give an instruction for defendant telling the jury that, if defendant became a partner after that date, plaintiff cannot recover.

7. ———: ———: **Sharing in Profits.** An agreement by the members of a partnership that a defendant who signed a note for the firm to enable it to carry on an existing construction contract should share in the profits, did not constitute him a partner, and an instruction so informing the jury is not error.

Headnotes 1 to 3: Partnership: 1, 30 Cyc. 352, 405 (1926 Anno), 413 (1926 Anno); 2, 30 Cyc. 405, 409; 3, 30 Cyc. 409. Headnotes 4 to 6: Trial: 4, 38 Cyc. 1717; 5, 38 Cyc. 1602; 6, 38 Cyc. 1626. Headnote 7: Partnership, 30 Cyc. 380.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*Ward & Reeves* and *V. O. Coltrane* for appellant.

(1) The trial court erred in excluding from the jury the answer of Hinerman fixing the date of March, 1918, when, as he states, H. M. Smith became a member of the partnership. Also the answer of Hinerman to the effect that at the time Smith signed the note on May 8, 1918, Smith was then a member of the firm. (2) The court also erred in excluding the testimony of Hinerman that the members of the firm were Hinerman, Coffman, Cope and Smith; also the same question and answer which was excluded by the court. This testimony was sought from one of the partners themselves, and a partner can testify as to who his co-partners were at a given date. 2 Bates on Partnership, art. 1158; 17 Am. & Enc. Law, 1323; Gates v. Manny, 14 Minn. 21; Walsh v. Kelly, 42 Barb. 98; Atwood v. Meredith, 3 Miss. 635, 639; Greenleaf on Evidence, art. 177. (3) The court erred in refusing to permit witness Hinerman to testify that Smith

told him at the time he made the partnership agreement to go back to Caruthersville and tell the creditors of the Hinerman Construction Company that he was now a partner and that they would have the money in a few days and would pay them.  Supply Co. v. Metcalf, 174 Mo. App. 559.  This testimony was most important and was certainly competent as proving a statement coming from Smith himself to the effect that the creditors could rely on him as a partner in the extension of credit and in the payment of bills of the construction company.  (4) It was admitted by all the evidence in the case that Coffman and Cope were members of the partnership.  The plaintiff offered in evidence certain correspondence between a creditor and Cope, in which Cope stated that Smith was a member of the partnership.  (5)  The same rules of evidence with reference to the competency of statements made by an agent is applicable to statements made by partners, because, in law, each partner is the agent of the other.  There must be some independent testimony of agency or of partnership, before the declarations of the agent or partner become competent evidence against the principal or other partner.  But when there is independent evidence of agency, that is, evidence other than that of the acts and declarations of the alleged agent, then the acts and declarations of the agent are competent, including the declarations that he was acting as agent in the particular transaction.  Most of the authorities, including those from Missouri, make such declarations or statements competent in *corroboration.*  Werth v. Ollis, 61 Mo. App. 401; Union Bank v. Wheat, 58 Mo. App. 11; Hill Bros. v. Bank of Seneca, 100 Mo. App. 230; Stave Co. v. Railway, 119 Mo. App. 502; Stenson v. Landcaster, 178 Mo. App. 346; Sumner v. Saunders, 51 Mo. 89; Peck v. Richie, 66 Mo. 114; 31 Cyc. 1655; 2 C. J. 939; 2 Wigmore on Evidence, sec. 1078; State ex rel. v. Henderson, 86 Mo. App. 490; Woodin v. Leach, 186 Mo. App. 278; Clark v. Admr., 26 Mo. 264; Meirs v. Buchter, 197 Mo. 68; Bergman v. Railway, 104 Mo. 77.  The same rule which makes the acts and declarations of an agent com-

petent against his principal, likewise makes the acts and declarations of one partner evidence against another partner when such acts and declarations are in reference to matters connected with the partnership business.

*Sam M. Wear* and *Lewis Luster* for respondent.

(1)   The court did not commit error in refusing to permit Hinerman to testify that Smith was a "partner" in the Hinerman Construction Company.   Or when he became a member of the "partnership" or if he was a member of the "partnership" when he signed a certain note, or in sustaining objections to any testimony along this line.   Such testimony calls for mere legal conclusions and has no probative force in establishing the fact of partnership.   Graft Distilling Co. v. Wilson, 172 Mo. App. 612; Ellis v. Brand, 176 Mo. App. 390; Whittling v. Schreiber, 202 S. W. 418; Brandon v. Distilling Co., 52 So. 641.   (2)   It was not error for the court to refuse to admit the letters, Exhibit "D" and "C."   By all the rules these letters are incompetent.   The case was dismissed as to Cope.   So they were not competent as admissions against him.   They were also incompetent because "hearsay" and because calling for legal conclusions.   Authorities supra; Rimel v. Hayes, 83 Mo. 200; Burt Zaiser v. Claussen, 208 Ill. App. 378; Smith v. Hulett, 65 Ill. 495.   (3)   The court did not err in refusing to permit certain witnesses to testify that Hinerman (or Cope) stated to them that Smith was a partner or had agreed to go into the partnership, and the offer made by appellant was properly rejected by the court.   These declarations as offered called for mere legal conclusions. Hearsay declarations of an alleged partner are not competent or admissible to prove the partnership as against another.   Chamberlaine v. Fisher, 75 N. W. 931; Bank v. Leland, 25 So. 195; Dowzelot Co. v. Rawlins, 58 Mo. 77; Plumbing Co. v. Dittmer, 223 S. W. 818; Hardware Co. v. Williams, 154 Mo. App. 725; Robbins v. Ward, 111 Mass. 244; Shaw v. Jones, 66 S. E. 240; Graham v. Swann, 147 S. W. 11; 2 Clement-Bates on Partnership,

sec. 1151; Mechem on Agency, sec. 100; 30 Cyc. 409.    (4)
Such declarations of an alleged partnership, testified to
by another, are not admissible to prove partnership, even
after the partnership is otherwise prima-facie established
by competent evidence.    "A thing cannot be evidence to
corroborate which is not evidence of itself."    Rimel v.
Hayes, 83 Mo. 200; Filley v. McHenry, 71 Mo. 417; Smith
v. Hulet, 65 Ill. 495; Gardner v. N. W. M. Co., 52 Ill.
367; Pierce Oil Co. v. Zinc Co., 98 Mo. App. 329; Bank v.
Hall, 93 S. E. (N. C.) 981; Bank v. Dewitt, 31 Pac. (Cal.)
744; Henry v. Willard, 73 N. C. 35-42; Robins v. Wil-
lard, 6 Pick. (Mass.) 464; Walle v. Brown, 4 Wharton
(Penn.) 365.    (5)    Such declarations offered simply to
prove partnership or in further proof of partnership
are to be distinguished from declaration offered after
the partnership is established, which are in fact part of
the *res gestae* verbal acts, or declarations which show that
at the time he was doing the thing, such as buying the
goods or making the contract, the party was acting for
the partnership.    Henry v. Willard, 73 N. C. 35-42;
Dowzelot v. Rawlins, 58 Mo. App. 77; Robbins v. Ward,
111 Mass. 244.

WOODSON, J.—This suit was instituted in the Cir-
cuit Court of Greene County by the plaintiff against the
defendants.    The petition alleged that the defendants
were co-partners doing business under the firm name of
Hinerman Construction Company; that the plaintiff, be-
tween the dates of August 27, 1917, and August 1, 1918,
at the special instance and request of defendants, sold
and delivered to the defendants certain materials of the
value and for the price of $1428, the items of which,
as well as the dates when the various materials were sold
and delivered, and the prices charged therefor, respec-
tively, appeared from the bill of items and statement of
the account attached to the petition, and marked "Ex-
hibit A."    The trial resulting in a judgment by confes-
sion against the defendant W. W. Coffman, and a judg-
ment by default against defendant J. H. Hinerman.    The

defendant C. D. Cope, not being served, the case was dismissed as to him. The case went to trial before the jury as to the defendant H. M. Smith, who had filed an answer under oath denying that he was a partner with his co-defendants. The verdict and judgment was in favor of the defendant H. M. Smith, and this appeal was duly taken and prosecuted to this court by the plaintiff as to the defendant, H. M. Smith.

At the time set out in the petition and for some time prior thereto, the Hinerman Construction Company was engaged in constructing street paving in the city of Caruthersville, Missouri, the total amount of this work under the contract being nearly $100,000. The contracts for the work were taken in the name of J. H. Hinerman, because, as he testifies, it would not be legal to take the contracts in the name of the co-partnership. The plaintiff, Hely, furnished and charged to the Hinerman Construction Company cement and other materials which he sold to the Hinerman Construction Company to be used in the street work. There was no dispute at the trial as to the correctness of this account, but the only question was whether or not H. M. Smith was a member of this partnership.

The plaintiff introduced in evidence the deposition of J. H. Hinerman taken in Texarkana, Texas, in October 6, 1919. On direct examination he testified as follows:

"My name is J. H. Hinerman; age 50; occupation, contractor and builder for the Texas & Pacific Railway Company. In connection with my present occupation I am temporarily located at Marshall, Texas. I formerly resided in Springfield, Missouri. Yes, I am acquainted with the Hinerman Construction Company. The Hinerman Construction Company is a partnership.

"Int. 6. Who compose the partnership members of the Hinerman Construction Company? Ans. 6. J. H. Hinerman, W. W. Coffman, C. S. Cope and H. M. Smith.

"MR. LUSTER: Defendant H. M. Smith objects to question No. 6 and answer because it calls for a con-

clusion and legal deduction of the witness and the answer is incompetent and of no probative value.''

Which objection was by the court sustained, and to which action of the court the plaintiff then and there duly excepted at the time.

Witness (continuing): ''I am one of the partners. Smith and Coffman are at Springfield, Missouri; I think Cope is now at New Orleans, but I am not sure. The partnership of the Hinerman Construction Company was formed on July 27, 1917; when it was first formed J. H. Hinerman, W. W. Coffman and C. D. Cope composed the partnership. At the time the partnership was entered into we three members had a written agreement; there were three copies of the original agreement signed by the members, and each member retained a copy; I have a copy in my possession.

''Int. 18. You have stated that H. M. Smith afterwards became a member of the partnership doing business under the name of the Hinerman Construction Company. Please state as near as you can when H. M. Smith became a member of that partnership. Ans. 18. I think it was in March, 1918.

''Mr. Luster: Defendant objects to question and answer No. 18 because it calls for a conclusion and a mere deduction on one of the vital issues in the case, to-wit, that Smith had become a member of the partnership, and the answer thereto is a mere deduction or conclusion of the witness. One of the questions to be decided in this suit is whether or not there was any contract or agreement between Smith and the members of the Hinerman Construction Company whereby Smith became a partner. This can be determined only by showing what that contract or agreement was, what was said and what was agreed to. Hence the question and the answer thereto are incompetent for the reason that it calls for a mere legal conclusion and has no probative value. Defendant moves that the question and answer be stricken out.''

Which objection and motion of defendant was sustained by the court, and to which action of the court the plaintiff then and there duly excepted at the time.

"Int. 19. I hand you a note dated May 8, 1918, signed by J. H. Hinerman, W. W. Coffman, and H. M. Smith, and ask you to state whether or not at the time that note was signed H. M. Smith was a member of the partnership doing business under the firm name of Hinerman Construction Company? Ans. 19. He was.

"MR. LUSTER: Defendant objects to question No. 19 and the answer thereunder for the reasons covered by objections to question 18 and the answer thereto, for the reason that it calls for a deduction and legal conclusion of the witness and has no probative value and is not competent under the pleadings in this case, and further objects because the instrument is not introduced in evidence, is not attached to the deposition. The question assumes that the instrument is signed by Hinerman, Coffman and Smith when the instrument itself would be best evidence, and defendant moves that said question and answer be stricken out."

Which objection and motion of defendant was sustained by the court, to which action of the court the plaintiff then and there duly excepted at the time.

The deposition mentioned contained many pages of this same class of testimony, with the same class of objections made thereto, and the rulings of the court were the same, so it will serve no good purpose to burden this statement with a repetition of them.

The plaintiff next offered in evidence the articles of co-partnership before mentioned, dated July 27, 1917, and signed by J. H. Hinerman, W. W. Coffman and C. D. Cope, which is in words and figures as follows:

### EXHIBIT B.

#### "Articles of Partnership"

"This agreement made this 27th day of July, 1917, between J. H. Hinerman, C. D. Cope and W. W. Coffman, all of the city of Springfield, County of Greene and State of Missouri, witnesseth:

"1.   The said parties hereby agree that they will become and be partners in business for the purpose and upon the terms hereinafter stated.

"2.   The firm name of the partnership shall be Hinerman Construction Company.

"3.   The business to be carried on by said partnership shall be that of promoting and constructing street paving.

"4.   The principal place of business of said partnership is to be in the city of Springfield.

"5.   The term for which said partnership is organized is five years from and after August 1, 1917.

"6.   That the said partners are to share equally in the profits and losses of said business.

"7.   Each of said partners is to give such of his time and attention to the said business as may be required, and is to use his utmost endeavors to promote the interests of the said firm; the said Hinerman shall have the management and superintendency of the business, the said Cope shall devote his attention to the promotion of paving contracts, and the said Coffman shall devote his attention to the negotiation of loans and the providing of the funds necessary to carry on said business.

"8.   All contracts shall be taken in the name of the Hinerman Construction Co.

"9.   Books of account of the transactions of said partnership shall be kept at the Farmers & Merchants Bank of Springfield, Missouri, and shall at all times be open to inspection by any partner.   Each partner shall cause to be entered upon said books a just and true account of all his dealings, receipts and expenditures for or on account of said firm.

"10.   All questions of difference as to the management of the business shall be decided by a majority of said partners, and no partner shall knowingly do any act in relation thereto contrary to the decision of the majority.

"11. Either of said partners may retire from said partnership at any time, giving his said partners ten days written notice of his intention to do so.

"12. Upon dissolution of said firm by lapse of time or otherwise, the said business shall be wound up, the debts paid, and the surplus divided between the partners in accordance with their interest therein.

"In witness whereof, we have hereunto set our hands, the day and year first above written."

> "J. H. HINERMAN
> "W. W. COFFMAN
> "C. D. COPE."

The testimony taken in a second deposition of Mr. Hinerman is in all material regards the same as that given by him in the first deposition taken, and the objections of counsel and the rulings of the court on the admissibility of same in evidence were the same as made regarding said first deposition.

Edward Hely testified in his own behalf as follows: I am the plaintiff. I reside at Cape Girardeau, Missouri. I am engaged in the business of crushed rock. I am acquainted in a business way with the Hinerman Construction Company. I furnished that company crushed rock for the paving work in Caruthersville, Missouri, in the years 1917 and 1918. The items attached to the petition in this case is a true account between me and the Hinerman Construction Company. The Hinerman Construction Company owes me on that account $1428. I made demand on the Hineman Construction Company for payment on this account the 1st of August, 1918, and monthly thereafter; this entire balance of $1428 was due the 1st of August, 1918. On April 26, 1918, they promised to pay me everything they owed me. They paid me $1168; those payments were made by the Hinerman Construction Company by check through the mail; Cape Girardeau is eighty miles from Caruthersville. The charges made in that statement are fair and reasonable for the articles furnished the Hinerman Construction Company. No part of the $1428 has been paid.

W. D. Byrd testified on behalf of the plaintiff as follows: My name is W. D. Byrd; I live at Caruthersville, Missouri. I am mayor of the city of Caruthersville; have been mayor of Caruthersville for about five and a half years; I was mayor of Caruthersville at the time of the street paving in controversy here. I know J. H. Hinerman, C. D. Cope and W. W. Coffman, and I have met the defendant Smith. There was a contract for street paving let to J. H. Hinerman in 1917. The approximate amount of the street paving was ninety-nine thousand and some odd dollars. All the work was let to J. H. Hinerman. Yes, there were several different contracts for the work, but all amounted to about ninety-nine thousand dollars. As I remember the work progressed for about eighteen months before it was finished. The contracts were let in August, 1917, about the 9th I believe. Before the contract was let we advertised for bids in the regular form. Yes, sir; we advertised more than once.

"Mr. Luster: I don't see what they are getting at in this, we don't make any point on that, as a matter of fact the Hinerman Construction Company did this work down there, or the fact this account is all right against the Hinerman Construction Company; the question here is whether the defendant Smith is a partner.

"By the Court: Will you treat it as established then?

"Mr. Coltrane: We have no purpose in bringing it out either if that is the fact; we want to show that the partnership became short of funds and it became necessary to get somebody else in.

"By the Court: Well, you can show that."

Witness (continuing): The contracts for that work in the city of Caruthersville were completed about the 1st of October, 1918. The contracts were let in the name of J. H. Hinerman, but the work with reference to employing help, paying bills and things of that kind was carried on in the name of the Hinerman Construction Company. That company employed a good deal of help

on that work. They were delayed practically all the time after they began work; they were delayed on account of the shortage of material and labor, on account of cotton picking in the fall; it was hard to get labor, and then material, they couldn't get shipments made, that stopped them. I think they were stopped completely once for the lack of material. They closed down in the winter of 1917 and 1918, and resumed work in the spring of 1918, closed down on account of bad weather. Financial trouble overtook this company; they were short of this material, they couldn't pay the materialmen, and they were delayed until about March or April, 1918. They owed a good many debts at that time. . . . In the spring of 1918, Mr. Hinerman went away, and upon his return he practically paid his bills all up, I think the most of them, and then the work was resumed.

"Q. Now after Mr. Hinerman came back to Caruthersville and brought the funds or moneys with which to adjust matters with his creditors you may state what he said, if anything, with reference to Mr. H. M. Smith coming in?"

The court then suggested he make that offer to the stenographer, which was done and the defendant objected, which objection was sustained, and the plaintiff excepted.

On re-direct examination he testified: I met Mr. Coffman; he was there. The only connection that I had with it as mayor of the city was to see that the contract was carried out. Mr. Hinerman was there representing the Hinerman Construction Company; he is the one with whom I personally dealt. . . . When I saw Coffman down there I didn't know what connection he or Smith, or what connection either one of them, had with the bank, only what I had been told by Hinerman and Cope.

I said Mr. Coffman was down; I believe he was there twice as I remember it. Cope was there frequently. Hinerman was in charge all the time, looked after the construction work for the Hinerman Construction Company. Mr. Smith was never down there that I know of.

"MR. REEVES: We next offer in evidence exhibits 'C' and 'D,' being a letter written by the East Arkansas Lumber Company to C. D. Cope and C. D. Cope's reply thereto."

Then follow two letters, in each of which Mr. Cope stated that the defendant Smith was a member of the co-partnership, which on the objection of counsel the court excluded, and plaintiff duly excepted.

Glen Vandivort testified on behalf of the plaintiff as follows: I manage one of the East Arkansas Lumber Company's branch yards at Caruthersville, Missouri.

"Q. I hand you what purports to be a carbon copy of a letter written by the East Arkansas Lumber Company written to C. D. Cope, dated November 29, 1918, and ask you to state if you know whether or not the original of which that appears to be a carbon copy was mailed to C. D. Cope? A. Yes, sir. It was mailed to him at his address, New Orleans, La.

"Q. Is the letter which is attached to the carbon copy signed C. D. Cope a letter which you received in reply to that letter? A. Yes, sir."

THE WITNESS: The East Arkansas Company furnished the Hinerman Construction Company all the cement. Early in the spring of 1918 the Hinerman Construction Company owed us a bill for $8000; it had been running all winter, and I never received any money from them. I told them the company wouldn't stand for it; they wanted to continue the work and continue owing me. So Mr. Hinerman and Mr. Cope were in together; and they saw I wasn't going to put any more material out to them; so Mr. Hinerman and Mr. Cope left there and said they would be back in a few days with plenty of money to pay me, they were going to make arrangements, they came over to Springfield and came back and Cope told me they had made arrangements.

"MR. WEAR: We object to all that, that has nothing to do with this case."

I suppose they came to Springfield; I don't know except what they told me. After they came back, on

April 30th, they gave me a three thousand dollar check, I went up and got on Mr. Hinerman, I says, That won't do at all, I want my money. So that afternoon they gave me a check for $4000.

They paid me $7000 April 30, 1918; they went on and their credit was good, everything went on all right until August, when they owed me about $6000, and I wanted some more money and I got on Mr. Hinerman again and says, I want my money; he says, Sure I can pay you, and gave me a check for my money. The judge won't let me tell where they got the money. Hinerman left town and he got the money and came back. That was the 30th of August, and at that time they paid me $5000.

MR. REEVES: The plaintiff next offers in evidence an exhibit, being a note dated Springfield, Missouri, May 8, 1918, for the principal sum of $2000, signed J. H. Hinerman, W. W. Coffman and H. M. Smith, being a note made to the Queen City Bank. Which is admitted by the court.

The defendants' testimony was substantially as follows: Mr. J. H. Shackelford, Dr. D. U. Sherman, Judge Arch A. Johnson and J. B. Todd all testified that Hinerman's reputation for truth and veracity was bad.

W. W. Coffman testified on behalf of the defendants: My name is W. W. Coffman. I live at Springfield. I am in the banking business, with the Farmers & Merchants Bank; have been with that bank for nearly four years. Before I went in the Farmers & Merchants Bank I was cashier of the Bank of Commerce, and was with that bank ever since it was organized—I think about five years. Prior to that time I was in the banking business down in southeast Missouri, at Mountain View. I came from Kentucky to Missouri. Mr. Cope is a son-in-law of mine. Yes, sir, I am well acquainted with Hinerman and Cope, I have known Hinerman not so very long, I have known him a few years. Myself, Cope and Hinerman entered into a partnership agreement at one time. That is the articles of partnership we entered into. In this suit at

one time I filed an answer denying I was a member of the firm, and I still don't think I was a member. After consulting my attorneys they thought that was all I could do; morally I was no more a partner than you were or anybody else. I helped Mr. Hinerman to get money in this paving work at Caruthersville, and I was sued as a member of the firm; he agreed to give me one-third of one-half of the profits if I would help him get the money to finance the job, and I helped him. First, he said it wouldn't take any more than six or seven thousand dollars, and he told me that he would assign the taxbills wherever I wanted him to, if I would help him raise the money. The first money we borrowed we borrowed from the Central National Bank at St. Louis on the assignment of the taxbills, and I also signed a note with him when the job first started. I don't remember how many notes I signed; I think we made about three or four at the Central National first and last. Those two notes are the first notes we made to the Central National, the last one was made right at the windup of the business; that is the first note ever made to the Central National; both were for $5000.

"MR. LUSTER: Defendant now offers in evidence the notes above referred to marked defendants' exhibits '2' and '3' which are as follows: These notes are dated August 10, 1917, and October 3, 1917, respectively. They are made payable to the order of the Central National Bank of St. Louis, and are signed by 'J. H. Hinerman Construction Company by J. H. Hinerman,' and also signed by W. W. Coffman." There was no question made as to these notes and for that reason they are not set out herein.

THE WITNESS (continuing): We afterwards made another note to them, I think in August, 1918; yes, sir, I signed that note and Hinerman signed it. We got some money from the Queen City Bank, and we got some money from the McDaniel National, I expect the most of it was really furnished by the Farmers & Merchants Bank; the tax bills are all assigned to secure the loans. Plaintiff's "Exhibit F," which was introduced in evidence, signed

by H. M. Smith, I will explain under the circumstances that note was signed: This note was first wrote up, Hinerman said he was just bound to have some more money, we were loaning him considerable money at that time, and he signed the note and gave it to me, the Farmers & Merchants Bank was loaning him all the money they could, they were close loaned and didn't have the money to spare, he gave it to me and told me I could go out and get his wife to sign it and we could get it from the Queen City Bank. I went up and told Nicholson these bills were all assigned to our bank and if you rather I will have Smith sign this note; Hinerman knew nothing about Smith signing the note up to that time. I never said a word to Hinerman about getting Smith to help me finance this. Hinerman signed it and turned it over to me, and I signed it and had Smith sign it and went up and got a cashier's check for it. Smith was perfectly safe; they had the tax bills; when he was in here I had Hinerman go up there and give a check for the note as soon as we got the tax bills in to pay for it. The fact of the business is Mr. Smith didn't talk to Hinerman about signing this note; whatever conversation he had he had with me, as far as I know. Mr. Smith signed that note as an accommodation to me, the bank was protected and he was protected. I was in the bank there with Mr. Smith. Mr. Smith signed another note at the Central National Bank $7000. Those are the only two notes that Mr. Smith ever signed for the Hinerman Construction Company. That was on the 29th day of August, 1918 We had loaned at that time all we could loan him legally under the law, and really we didn't have the money to spare; he came in and gave us a talk that he simply had to raise some money and be very quick about it, I says, You can't ask this bank to carry you for any more money and I don't believe you are going to make any money the way you are going, and I don't care to sign any notes; he went and showed me his figures and says, We are bound to have some money; I says we might get the money for you in St. Louis, I don't know; I says, I will

see; I called up Mr. Edwards of the Central National and talked to him about it, and he said, Would Smith sign the note?

"MR. REEVES: We object to that." Which objection was by the court overruled, and to which ruling of the court the plaintiff excepted at the time.

THE WITNESS: He said, Would Smith sign that note? I said I don't know, and he says, If he will sign it we will take care of it for you, and I went to Hinerman and told him we can get the money for you in St. Louis, but I don't like to ask Smith to do that, it is a good big note, and he says, There isn't any risk to run. I says, May be there isn't; I says, If he signs this note, if there is any profit in it, he ought to have part of it, and he says, There ought to be six or seven thousand dollars profit, and I says, If he goes into it, he ought to have part of that profit, and we called Smith in and he agreed to sign the note, and Hinerman spoke up and says, If you will do that for us we will split the profits with you; we will give one-fourth of the profits. Smith said that is all right and walked out. The note was signed that day. Mr. Hinerman signed the $7000 note, and Mr. Smith and I endorsed it; the tax bills were assigned to our bank to protect it. The conversation was in the back room of the Farmers & Merchants Bank. Mr. Hinerman and Mr. Cope and I were there, and we called Mr. Smith in to the conference. Mr. Hinerman did most of the talking. Mr. Hinerman showed him the condition of the company, the figures and the progress that was being made in the work—showed him the whole thing. The tax bills were assigned to our bank; we had plenty to protect our bank on all the notes. Mr. Smith did not know anything about the written contract of partnership Mr. Hinerman, Mr. Cope and I had; I thin. I had it, may be, there in my box at the bank, but I didn have it present in the room there; it was not discussed in any way whatever. The $7000 note was paid by the Hinerman Construction Company, after we got the tax bills. The bills were credited to our bank and we credited that to Mr. Hinerman's account, the value of it to the Hiner-

man business. The tax bills were sold to the Madison Bonding Company; we handled them. We sent them to the Central National Bank of St. Louis, and the Central National Bank collected the money on them. They were sold at a discount, and we got the net amount. It is not true that Smith agreed to come into partnership under the same terms as the original contract between me and Cope and Hinerman. There was nothing said at that meeting or any other meeting there at that time or afterwards in which Mr. Smith agreed to become a partner in this Hinerman Construction Company. This company in its windup became involved, owes us, the bank, $1,000 yet. There was nothing said at any time about Smith being in this Hinerman Construction Company. The contract at Caruthersville was taken in the name of Mr. Hinerman. If Hinerman loaned $5000 of his own money on this business he never put a dollar of it in our bank; I know as well as I know anything that Hinerman never paid out that much. He never at any time asked me to reimburse him for any money he had paid out, never mentioned such a thing. He went somewhere down in Texas. Mr. Hinerman has never written me a word about this suit. I have no financial interest in this suit, no matter how it terminates.

Cross Examination by Mr. Reeves: Mr. Wear has been my attorney throughout this proceeding. Until now I have taken the position I was not a partner with Hinerman, and I still think I am not. I have no agreement with my co-defendant Smith with reference to this suit. I don't know that it is any of your business whether I am solvent or insolvent. I have always paid my debts. I don't know what the question means whether a man is solvent or insolvent.

"Q. Assuming you have debts, I believe you have a right to exemptions, to take the debts and exemptions into consideration, are you worth anything over and above these debts and exemptions?

"MR. LUSTER: We object to that because it is incompetent and immaterial; this witness has confessed to allow judgment to go against him, and whether or not he is solvent or insolvent is not material in determining the question of defendant Smith's liability in this case."

Which objection was by the court overruled, and to which ruling of the court the defendant excepted at the time.

THE WITNESS: I don't owe very much; I don't suppose you could make anything out of me legally. Hinerman has never written me about the matter of this lawsuit, and I have never written him—I didn't know where to write him, and I don't know yet. It wasn't any of my business to write him. He owes the bank, but I think they have got it secured. It is a demand note; it was given on the 8th day of October, 1918. I knew there was no use to make demand on him. I have some of them taxbills now in litigation. I have them tied up; they amount to thirteen hundred and some odd dollars. Been pretty near a year since I saw Hinerman; the last time he was here he didn't come to see me. I think the last time I saw Hinerman was when he signed that note. I say I don't think I am a partner yet; it seems legally you fellows have put me in as a partner. I testified before in another case. I marked "cancelled" across the face of that contract and handed it back to Hinerman and Hinerman handed it back to me. I couldn't tell you how many notes Hinerman and I made; I haven't got any of them here except those notes from Hinerman; I could get the balance of them. I know how many notes Smith signed; because those are the only notes he was asked to sign. I am pretty sure that the Queen City Bank note is the only one he signed; if he signed any other, I don't remember it; he did sign one for $7000, and that was the same time that me and Hinerman agreed that Smith was to have part of the profits. Hinerman said that the profits on the job at Caruthersville would be about five or six thousand dollars; I just went over Hinerman's figures. Mr. Smith, I don't think, saw the figures; he

wasn't called at that time, when me and Hinerman agreed and told Smith we had come to an agreement and he was to help and split the profits. It was the opinion of all of us that there would be a profit on the Caruthersville job, if Hinerman was telling the truth. It looked like he would make some money out of it. When he first started in he thought he would make $25,000. He came out at a loss. Labor and material went up, I guess. I went down there. In July, 1918, we got some tax bills. The Hinerman Construction Company got about $17,000 through the Central National Bank of St. Louis. This $7000 we raised on the note which I say Smith signed, dated May 8, 1918, I am pretty sure was placed to the credit of the Hinerman Construction Company. He borrowed two thousand from us at the same time and two thousand from those people. Mr. Nicholson gave me a cashier's check for that; at the same time, he borrowed two thousand from us and two thousand from the Queen City Bank. At that time I was vice-president of the bank, and Smith was cashier. Mr. Smith owned and controlled the business affairs of the bank. The account was carried at our bank both in the name of J. H. Hinerman and the Hinerman Construction Company.

H. M. Smith testified in his own behalf as follows: My name is H. M. Smith; I am the defendant in this case. I have lived in Springfield sixteen years. Most of the time I have been here I have been connected with the Farmers & Merchants Bank; I am cashier of that bank. I have been connected with that bank from the time of its organization in 1903, until February of this year. I am acquainted with Mr. Hinerman, Mr. Cope and Mr. Coffman; Mr. Coffman held the position of vice-president of my bank; I had been with him something like four years. In April 1918, Mr. Coffman came to me and said they were doing some work in southeast Missouri (the Hinerman Construction Company). He said I have been getting money from the Central National Bank in St. Louis; he says now, If we have these tax bills assigned to the

Farmers & Merchants Bank will they loan us some money?
I told him, Yes, if it was all right, if the assignments
were made regular; and so they had the assignments
made, in April, 1918, I think about the 15th of the
month; we loaned them a thousand dollars, and I think
it was about the 22nd of the month we loaned them five
thousand dollars.  A little while after that it seems they
needed some more money, Mr. Coffman told me that; he
asked me if I could get him some more money; I told
him I thought we had loaned them about enough at the
present time; he said they needed some more money;
he says, I'll tell you we'll get it some place, some other
bank; he never said what bank, and so I think it was
on the 8th of May he came to me with a note from the
Queen City Bank for two thousand dollars; he says,
We can get some money up at the Queen City Bank, but
he said that Mr. Nicholson wanted additional security
and wanted to know if I would indorse the note with
them, under the circumstance the tax bills had been
assigned to the Farmers & Merchants Bank; this note was
a short time, and I told him if it would be an accommo-
dation to them I would do it, and I signed the note to the
Queen City Bank.  The latter part of August Mr. Hiner-
man came here to Springfield and he and Mr. Coffman
and Mr. Cope had a conference in the rear of the bank,
and after they had been in conference for some time
they called me in, and Mr. Hinerman said they had some
bills due down at Caruthersville and it was necessary to
have some more on it, and I told him the Farmers &
Merchants Bank couldn't extend any more accommoda-
tion to them at the present time, they had let them have
all they could loan them; so he says, Well, we can get
some money in St. Louis, I think we can get some
money in St. Louis if he have proper indorsements; well,
I said, that is your business, not mine. So after they
talked some time Mr. Coffman stepped to the phone and
called up St. Louis and asked the Central National Bank
if they could loan the Hinerman Construction Company
some money.  It seemed in about thirty days there would

be ten thousand dollars worth of tax bills issued and he would pay up, he said, if they could borrow some money in St. Louis, these tax bills would be issued, and they would take up that note; and so I asked Mr. Hinerman if that was a fact, and he said it was. So the bank in St. Louis told them if they would get my endorsement they would let them have $7000 for thirty days, They were hard pressed for money, and I thought the proposition was safe as far as I was concerned and the bank, and I told them I would indorse the $7000. At the close of the conference I got up and left the room and Mr. Hinerman says, "Here, Smith, you have been mighty nice about this furnishing us money all along and at the close of this business we will just give you a part of the profits." I says, That is all right, and I went out and that is all that was said. There was no contract of any kind in that meeting; I had never seen this partnership contract before that meeting, nor at the meeting. There was nothing said about the contract at all. They did not say anything about me going into the partnership with them; I did not agree with Hinerman or any of the rest of them that I would go into the partnership with them under the terms of that contract or any other terms; the matter of partnership was not discussed in any way; I didn't know that they had any partnership at all. Our bank was getting eight per cent. on the loan on the tax bills; that was regular banking business. I never had any other conference with them before or after the one on August 29th. At the conference had on August 29th they went into details with me about the business and its indebtedness, assets and liabilities; I wanted to know how they were getting along, what they were doing, I wanted to know whether the tax bills were good or not. Hinerman never discussed the matter with me afterwards about how they were getting along. The tax bills were issued about the latter part of September. I took up the note that was made to the Central National Bank and charged it to his account. Hinerman never said

anything about the business after this conference had on August 29th; he never said anything to me about his having paid $15,000 personal money on the partnership debt, or asked me to share in that loss. I never did inquire of Hinerman what he was going to make down there, and I never did go down there to look after it.

Plaintiff in rebuttal introduced Alfred Page, W. S. Bryant, John L. Likens, T. H. Gideon, J. J. Richardson, All testified that the reputation of Mr. Hinerman for truth and veracity was either good, or that they had never heard it discussed.

The court upon the part of plaintiff gave the following instructions numbered 1 and 2.

"1.   The court instructs the jury that the writing offered in evidence, designated as 'Articles of Partnership,' dated July 27, 1917, and signed by the defendants, J. H. Hinerman, W. W. Coffman and C. D. Cope, constituted in law a partnership agreement and those named defendants thereby became partners. So, if you find and believe from the evidence in this case that the defendant, J. H. Hinerman for himself and for the said C. D. Cope and W. W. Coffman, under and in the firm name of Hinerman Construction Company, prosecuted and carried on a lot of street paving improvements in the city of Caruthersville, and if you further find that the defendant H. M. Smith became a partner in said contract for said street improvements in accordance with the terms and conditions of said paper writing above mentioned and designated as 'Articles of Partnership' and that the materials mentioned in the evidence, or any part thereof, were purchased from plaintiff by the Hinerman Construction Company for said improvements after said Smith became a partner, if you find he became a partner, and that neither said Hinerman Construction Company, nor any one for it, has fully paid the plaintiff for said materials, then you should find the issues herein in favor of the plaintiff and assess his damages at whatever sum you may find to be the reasonable value of the said materials furnished after said Smith became a partner, if

you find he did become a partner, not to exceed the sum of 1428 dollars, the amount sued for, and you may also allow the plaintiff interest on said sum, if you find in his favor, at the rate of six per cent per annum from the 24th day of May, 1919, the date of filing this suit.

"2. The court further instructs you in this case that it is not necessary in order to hold the defendant Smith liable as a partner in the Hinerman Construction Company that the said Smith should sign any instrument of writing agreeing to become such partner, but all that is necessary is that you shall believe and find from the evidence that the said Smith became a partnership member of the Hinerman Construction Company by oral agreement on the terms and conditions of the paper writing designated 'Articles of Partnership' as defined in other instructions."

The plaintiff upon his part prayed the court to instruct the jury as follows, which instructions were by the court refused, and he excepted.

"4. The court instructs the jury if you find and believe from the evidence in this case that the defendant H. M. Smith became a partnership member of the Hinerman Construction Company, as defined in other instructions, then the fact whether said company lost money or made a profit on the Caruthersville paving, or whether or not Hinerman owes the Farmers & Merchants Bank, or whether or not Hinerman properly accounted to the defendants Coffman or Smith, for the profits or losses of the partnership business, should not be considered by you, as under the law all partners are liable for partnership debts without regard to whether or not the partnership lost money or made a profit or whether or not the partners have honestly properly accounted to each other.

"5. The court further instructs the jury that in passing upon the question of whether or not the defendant Smith became a partnership member of the Hinerman Construction Company as defined in other instructions, you should not only take into consideration all of the direct and positive evidence in the case bearing upon that

question, but you should also take into consideration all the other facts and circumstances in evidence in this case.''

The court on the part of defendant H. M. Smith, and over plaintiff's objections, gave the following instructions numbered ''B'' and ''C'':

''B. You are instructed that if you find from the evidence that the agreement, if any, that defendant Smith had with a member or members of the Hinerman Construction Company was had on August 29, 1918, or at any time after August 1, 1918, then you should find for defendant Smith, no matter what you may find that agreement to be.

''C. You are instructed that even if you find that under an agreement between defendant Smith and the members of the firm of the Hinerman Construction Company, the said Smith was to receive a share of the profits, if any, on the construction work at Caruthersville, being done by the Hinerman Construction Company, yet if you find that said Smith was to receive such share of the profits merely as compensation to him for his services in assisting the Hinerman Construction Company in obtaining money to carry on the work, then this in itself is not sufficient to constitute Smith a partner in the Hinerman Construction Company, and if you so find your verdict should be in favor of defendant Smith.''

To which action of the court in giving said instructions B and C, and in giving each of them, the plaintiff by his counsel objected and then and there excepted at the time.

The court upon the part of defendant H. M. Smith, also gave the following instruction numbered ''A'':

''A. The court instructs the jury that the burden is upon the plaintiff in this case to prove his case by a preponderance, or greater weight, of the evidence.

''By the terms 'burden of proof' and 'preponderance of evidence' as used in these instructions, the court does not refer to the number of witnesses sworn on either side, but means that, in point of value and credibility, the evidence offered by a party to this suit on whom devolves

the burden of proof to sustain the issues concerning which the burden of proof is placed under these instructions, must outweigh that of the other party regarding said issues; and the court further instructs the jury that you are the sole judges of the credibility of the witnesses and the value to be given to their respective statements and evidence.''

I. Counsel for appellant first insist that the circuit court erred in refusing to permit in evidence the state-

Testimony:
Conclusion.

ments of Hinerman and Cope to the effect that defendant Smith was a partner in the co-partnership of Hinerman Construction Co. There is no merit in this contention. Clearly all such statements are merely statements of legal conclusions. A co-partnership can be created only by contract made and entered into by the parties, and in order to prove its existence the terms of the agreement must be proven, and the fact of its existence must be drawn from the terms proven, and not the terms of the contract from the mere statement of the fact, or legal conclusions. [Graf Distilling Co. v. Wilson, 172 Mo. App. 612; Ellis v. Brand, 176 Mo. App. 390; Wittling v. Schreiber, 202 S. W. 418; Brandon v. Distilling Co., 52 So. (Ala.) 641.] This point is decided against appellant.

II. Nor was there error committed by the trial court in refusing to receive in evidence letters ''D'' and ''C.''

Letters:
Hearsay.

The case had been dismissed as to defendant Cope, the author of the letters, and they were clearly incompetent as to Smith as being hearsay and mere legal conclusions of Cope. [Rimel v. Hayes, 83 Mo. 200; Burt Zaiser v. Claussen, 208 Ill. App. 378; Smith v. Hulett, 65 Ill. 495.]

III. Nor was there error in the refusal of the court to permit witnesses to testify that Hinerman and Cope

Declarations
of Partners to
Others.

stated to them Smith was a partner or had agreed to go into the partnership. They were purely legal conclusions and did not pretend to state agreement which constituted

the co-partnership. The authorities sustaining this proposition are numerous. [Chamberlaine v. Fisher, 75 N. W. (Mich.) 931; Bank v. Leland, 25 So. (Ala.) 195; Dowzelot v. Rawlins, 58 Mo. 1. c. 77; Monument Plumbing Co. v. Dittmer, 223 S. W. 818; Hardware Co. v. Williams, 154 Mo. App. 725; Robbins v. Ward, 111 Mass. 244; Shaw v. Jones, 66 S. E. (Ga.) 240; Graham v. Swann, 147 S. W. (Ky.) 11; 2 Clement-Bates on Partnership, sec. 1151; Mechem on Agency, sec. 100; 30 Cyc. 409.]

Such declarations of alleged partnership testified to by another are inadmissible to prove partnership even after the partnership has been prima-facie established by competent evidence. In other words "a thing cannot be evidence to corroborate which is not evidence of itself." [Rimel v. Hayes, 83 Mo. 200; Filley v. McHenry, 71 Mo. 417; Smith v. Hulett, 65 Ill. 495; Gardner v. N. W. M. Co., 52 Ill. 367; Waters-Pierce Oil Co. v. Zinc Co., 98 Mo. App. 329; Bank v. Hall, 93 S. E. (N. C.) 981; Bank v. De-Witt, 31 Pac. (Cal.) 744; Henry v. Willard, 73 N. C. 35, 42; Robbins v. Willard, 6 Pick. (Mass.) 464; Wallé v. Brown, 4 Wharton (Penn.) 365.]

And as said by counsel for respondent in their brief: "Such declarations offered simply to prove partnership or in further proof of partnership are to be distinguished from declaration offered after the partnership is established, which are in fact part of the *res gestae* verbal acts, or declarations which show that at the time he was doing the thing, such as buying the goods or making the contract, the party was acting for the partnership." [Henry v. Willard, 73 N. C. 35-42; Dowzelot v. Rawlins, 58 Mo. 77; Robbins v. Ward, 111 Mass. 244.]

Counsel for respondent have cited many other authorities holding that the letters of Cope, the statements of Hinerman and the statements of other witnesses, that Smith was a partner in the Hinerman Construction Company, are inadmissible in evidence, but I see no good purpose to be served by discussing them further, as they are clearly mere legal conclusions, and do not tend to prove any fact.

Counsel for appellant have cited many authorities in support of their contention that all such evidence is admissible for the purpose of proving partnership, but after a careful consideration of them, we have reached a different conclusion, and find that they are not applicable to this case. Among the authorities so cited are the following: Werth v. Ollis, 61 Mo. App. 401; Union Bank v. Wheat, 58 Mo. App. 11; Hill Bros. v. Bank of Seneca, 100 Mo. App. 230; Heading & Stave Co. v. Railway, 119 Mo. App. l. c. 502; Stenson v. Lancaster, 178 Mo. App. l. c. 346; Smith v. O'Bryant, 181 S. W. (Mo. App.) 123; Sumner v. Saunders, 51 Mo. 89; Peck v. Ritchey, 66 Mo. 114; and many others.

IV. Counsel for appellant next insist that the trial court erred in refusing to give instructions numbered 4 and 5 requested by him. In my opinion there is no merit in this insistence. These instructions should be viewed in the light of the fact that the court had previously instructed the jury fully upon all the issues in the case.

Comment.

Instruction numbered 4 was a comment upon the evidence and tended to mislead the jury. There was nothing which transpired during the trial nor was there anything contained in any of the instructions which intimated that the things stated in these instructions were in favor of Smith. Those matters were proper matters to be argued before the jury, but wholly improper to be put in an instruction.

Instruction 5 was likewise properly refused. All the testimony in the case was direct and positive, and had the court instructed the jury to have "taken into consideration all other facts and circumstances in evidence," it would thereby have impliedly, at least, have told them that there was evidence of other facts and circumstances, which as a fact was not true. To say the least, it would have left the jury to surmise and conjecture as to matters not in evidence. I know of no authority holding such in-

Other Facts
and Circumstances.

structions were proper.   Both of these instructions were properly refused.

V.   We do not find any error in the ruling of the circuit court in giving instruction marked B.   The appellant's petition alleges that he sold and delivered the materials to defendants at their instance and

*According to Plaintiff's Theory.*   request.   His own instruction numbered 1 heretofore set out tells the jury they must find that the materials mentioned in the evidence were purchased from plaintiff by the Hinerman Construction Company after Smith became a partner   It is manifest that from the petition and the appellant's instruction given at his request, that he is not seeking to recover from Smith on an agreement whereby he assumed the liability of the prior obligations of the Hinerman Construction Company, but solely upon the grounds that he furnished the materials to the Hinerman Construction Company during the time that he claims Smith was a member of that company, and there is no pretense that he furnished that company any materials prior to August 1, 1918, or if you fix the date at August 29th, still the result would be the same.   The argument of counsel for appellant to the contrary is unsound, as shown by these cases:   Bank v. Sandusky, 51 Mo. App. 398; Fagan v. Long, 30 Mo. 222; Spaunhorst v. Link, 46 Mo. 198; Allen v. Logan, 96 Mo. 591; Warren & Son v. Maloney, 29 Mo. App. 101; Bust & Son v. Long, 75 Mo. App. 103.

Consequently the trial court committed no error in giving this instruction.

VI.   Instruction C given for the respondent in substance told the jury that even though they should find from the evidence that Smith under an agreement had with the Hinerman Construction Company was to receive a portion of the profits of the business, yet that fact alone would not constitute him a partner in the firm of Hinerman Construction Company.   The authorities seem to declare that to be the law of this State. [Hughes v. Ewing, 162 Mo. 261; Hartwell v. Becker, 168 S. W. 837.]

This question is decided in favor of the respondent.

After a careful consideration of this case and all of the questions presented for determination, I have reached the conclusion that there is no error contained in the record, and therefore the judgment of the circuit court is affirmed.

All concur; *Ragland, J.,* in the result.